# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CRAIG A. LOZANOVSKI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.: 2:15-CV-454-TLS |
| | ) |
| CITY OF CROWN POINT, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendants Scott Bourrell, Derrell Josleyn, Robert Ballas, Mille Knezevic (collectively "the Defendant Officers"), and City of Crown Point, Indiana's Motion to Dismiss [ECF No. 26] the Amended Complaint [ECF No. 25] of Plaintiff Craig Lozanovski. The City of Crown Point moved to dismiss pursuant to Rule 12(b)(6), asserting that the Amended Complaint fails to state a claim upon which relief can be granted, and all Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5), asserting that they received insufficient service of process. On August 29, 2016, the Plaintiff filed his Response [ECF No. 30] to the Motion. The Defendants' Reply [ECF No. 31] was entered September 8, 2016. This matter is now ripe for the Court's review.

## COMPLAINT ALLEGATIONS

At about 6:30 p.m. on December 17, 2013, "Officer Bourrell came to the Crown Point Theater . . . to investigate an alleged harassment complaint against the Plaintiff." (Am. Compl. ¶ 9, ECF No. 25.) Finding the Theater locked, Officer Bourrell knocked on the ticket booth window, at which point the Plaintiff opened the window and said "Hello, how can I help you?" (*Id.* ¶¶ 9–10.) Officer Bourrell said "Open the door I need to talk to you," so the Plaintiff opened

the main entrance door and met Officer Bourrell "about four feet into the theater." (*Id.* ¶¶ 11–13.) The Plaintiff once more asked if he could help Officer Bourrell while placing his hands in his jacket pockets, to which Officer Bourrell said, "Take your hands out of your pocket[s]." (*Id.* ¶¶ 13–14.) He did not immediately take his hands out of his pockets, so Officer Bourrell "put his hand on his service revolver." (*Id.* ¶¶ 15–16.) In response, the Plaintiff removed his hands from his pockets, raised them into the air, and stated "I have no weapons." (*Id.* ¶ 17.)

Officer Bourrell ordered the Plaintiff outside, he grabbed the "Plaintiff by the jacket and pulled him through the doorway and began punching Plaintiff in the face," twelve or fifteen times. (*Id.* ¶¶ 18–21.) Once outside, Officer Bourrell ordered the Plaintiff to "[g]et to the ground" while still punching him, but the Plaintiff hesitated because there was "ice and snow on the ground." (*Id.* ¶¶ 22, 24.) "At that point, Officer Ballas put Plaintiff in a choke hold and wrestled him to the ground" and, while "laying face down on the ground with his hands at his side," Officer Josleyn used his Taser on the Plaintiff's right shoulder twice. (*Id.* ¶¶ 26–28.)[1] Officer Knezevic eventually arrived on the scene, "did nothing to stop the beating and abuse of the Plaintiff," and instead joined in. (*Id.* ¶ 29.) Finally, the "Plaintiff was handcuffed and taken to the Crown Point Police station." (*Id.* ¶ 30.)[2]

The "Plaintiff was treated at the hospital and then released to his father," "never returned to work," and in May 2014 "was awarded social security disability . . . and is traumatized when he goes into the public." (*Id.* ¶¶ 32–33.) The Plaintiff alleges claims under 42 U.S.C. § 1983 against the City of Crown Point for violation of his Fourth and Fourteenth Amendment rights,

---

[1] The Amended Complaint does not allege at what point Officers Josleyn or Ballas arrived on the scene or that either Officer arrived with Officer Bourrell.

[2] The Amended Complaint alleges that he "was not booked until December 21, 2015," but the Court thinks it is more likely that the Plaintiff's attorney meant to state that he was not booked for four days, until December 21, *2013*. (Am. Compl. ¶ 30 (emphasis added).)

and against the Defendant Officers for use of excessive force in violation of his Fourth and Fourteenth Amendment rights. (*Id.* ¶¶ 46–48.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

This Court's subject-matter jurisdiction over the § 1983 claims arises under 28 U.S.C. § 1331. The Court first analyzes the sufficiency of the Plaintiff's § 1983 claim against the City of Crown Point and then analyzes whether there was insufficient service of process.

**A.      Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted**

The Plaintiff alleges a 42 U.S.C. § 1983 claim, premised on the Fourth and Fourteenth Amendments, against the City of Crown Point. When public officers violate the constitutional rights of citizens, § 1983 provides the vehicle for a legal claim. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983; *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A municipality is a "person" under the law. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "Section 1983 does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). Instead, "[l]iability depends on each defendant's knowledge and actions, not on the

4

knowledge or actions of persons they supervise." *Id.* at 594; *see also Monell*, 436 U.S. at 694 (holding that a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). Therefore, a government entity can be held liable under § 1983 for its own acts, as opposed to those of its employees, as long as those acts are the moving force behind the constitutional violation. *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514–15 (7th Cir. 2007).

A government entity acts through its official policy or custom, which can be demonstrated by the following:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) the constitutional injury was caused by a person with final policymaking authority.

*Id.* at 515; *Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). Liability based upon a widespread practice requires a showing that a number of similar incidents establish an unconstitutional pattern of conduct. *Palmer v. Marion Cty.*, 327 F.3d 588, 595–96 (7th Cir. 2003).

Here, only two sets of allegations in the Amended Complaint could support § 1983 liability: the incidents of December 17, 2013, and the four separate lawsuits against the City of Crown Point involving alleged constitutional violations. The Plaintiff argues that these allegations demonstrate a widespread practice sufficient to survive a Rule 12(b)(6) motion in accordance with *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016). In *White*, an arrestee brought a § 1983 claim against the City of Chicago and one of its police officers for seeking a warrant to arrest him for a narcotics offense without probable cause. *Id.* at 840–41. The complaint alleged that the police officer asked a judge for a warrant without any evidence of a drug-related offense and included the police department's "standard printed form that does not

5

require specific factual support for an application for an arrest warrant." *Id.* at 844. These allegations met the "short and plain statement of the claim" requirement of Rule 8(a)(2), as the printed form was direct evidence that tended to show that the municipality was liable under § 1983. *Id.* (citing *Jackson v. Marion Cty.*, 66 F.3d 151, 152–53 (7th Cir. 1995)).[3]

The Plaintiff's reliance on *White* is misplaced. The allegations in *White* included direct evidence that would have raised the right to relief above the speculative level. By contrast, the four cases filed against the City of Crown Point are not direct evidence that the City has a custom or policy that violates the Constitution. Further, those cases do not create an inference of liability for a *Monell* claim, for "the number of complaints filed, without more, indicates nothing." *See Strauss v. City of Chi.*, 760 F.2d 765, 768–69 (7th Cir. 1985) ("People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist and did contribute to his injury."); *Rikas v. Babusch*, No. 13 CV 2069, 2014 WL 960788, at *3 (N.D. Ill. Mar. 12, 2014) (noting that prior lawsuits, which were "ultimately settled . . . w[ith] no finding of liability," did not "evidence a widespread municipal practice" under *Monell*).

All that remains for consideration on the Motion to Dismiss the Amended Complaint are the allegations about the incident on December 17, 2013. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle,* 471 U.S. 808, 823–24 (1985). The Plaintiff does not argue that the incident of December 17, 2013, was the

---

[3] *White* was nevertheless dismissed on other grounds, which are inapplicable to the present case. 829 F.3d at 844 (finding that the police officer's sworn testimony "provided sufficient evidence to establish probable cause," which in turn "establishe[d] that [arrestee] did not suffer a constitutional injury, . . . a necessary element of a *Monell* claim.").

6

result of such a policy, nor does he argue that any of the named Defendants had final policymaking authority. Accordingly, the Amended Complaint fails to state a claim that there was a widespread practice or custom within the City of Crown Point authorizing the use of excessive force. Accordingly, the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is granted as to the claims against the City of Crown Point.

**B.     Rule 12(b)(5): Insufficient Service of Process**

The Defendants argue that the Plaintiff's service of process was insufficient, which the Plaintiff disputes. In the event service of process was insufficient, the Plaintiff seeks leave from the Court to correct process. The sufficiency of the service of process is analyzed for the Defendant Officers only because the Court previously dismissed the claims against the City of Crown Point.

"After commencing a federal suit, the plaintiff must ensure that each defendant receives a summons and a copy of the complaint against it." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1004 (7th Cir. 2011). A Rule 12(b)(5) motion is a dismissal based upon insufficient service of process, the requirements for which are set out in Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period . . . .

Furthermore, a party may serve an individual within a judicial district of the United States by either:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:

>> (A) delivering a copy of the summons and of the complaint to the
>> individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of
>> abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by
>> law to receive service of process.

Fed. R. Civ. P. 4(e). Under Indiana law, a party may serve an individual via certified mail "with return receipt requested and returned showing receipt of the letter." Ind. Trial Rule 4.1(a)(1). Here, the Plaintiff attempted to serve process upon the Defendant Officers via certified mail. None of the Defendant Officers received the certified mail,[4] as Travis Thomas signed for all of the mailings that the Plaintiff sent to the Defendant Officers.[5] An individual's agent is one of "those persons having the authority to accept service" on behalf of a party via certified mail under Indiana law. *LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993) (citing Ind. Trial Rule 4.1(A)(3)); *see also* Ind. Trial Rule 4.16 (enumerating duties of "[a]nyone accepting service for another person"). "In order for a court to find that a person acted as a party's agent by appointment or agreement, there must be evidence of that appointment or agreement." *Goodman v. Clark*, No. 2:09-CV-355, 2010 WL 2838396, at *8 (N.D. Ind. July 12, 2010) (citing *Schultz v. Schultz*, 436 F.2d 635, 638–39 (7th Cir. 1971)).

Here, there are no allegations and no evidence to enable the Court to find that Thomas was the Defendant Officers' agent. He stated that he had "never been expressly authorized or expressly appointed by [the Defendant Officers] to accept service of process on their behalf." (Thomas Aff. ¶ 2, ECF No. 27-2.) The Plaintiff offers no evidence in rebuttal, stating only that,

---

[4] The parties briefly discussed whether some of the Defendant Officers had actual notice of the lawsuit, but that is immaterial to determining whether service of process was sufficient under both Indiana and federal law.

[5] Neither the Amended Complaint, the parties' briefings on this Motion, or Travis Thomas's Affidavit [ECF No. 27-2] allege what Thomas's employment status was or what his relationship was to the Defendant Officers. The parties' briefings appear to treat Thomas as an employee within the police department.

"If Mr. Thomas did not have representative capacity, he should not have signed" at the time of delivery. (Resp. 4.) Whatever the merits of this statement, it does not render the form of service effected in this case sufficient under the Indiana or federal laws. Therefore, insufficient service of process was executed upon the Defendant Officers. Pursuant to Rule 4(m), the Court orders the Plaintiff to perfect service within 30 days of the issuance of this Order.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss [ECF No. 26] is GRANTED IN PART and DENIED IN PART. The Court GRANTS the Motion to Dismiss pursuant to Rule 12(b)(6) the claims against Defendant City of Crown Point, Indiana. The Court ORDERS the Plaintiff to perfect service upon the Defendant Officers by February 23, 2017. If service is not perfected by February 23, 2017, this action will be dismissed without prejudice against the unserved Defendant Officers.

SO ORDERED on January 24, 2017.

                 s/ Theresa L. Springmann
                 THERESA L. SPRINGMANN
                 UNITED STATES DISTRICT COURT
                 FORT WAYNE DIVISION